RENDERED:  OCTOBER 8, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1385-MR

JAMES K. GILLMAN                                                                      APPELLANT

APPEAL FROM MARTIN CIRCUIT COURT
v.        HONORABLE JOHN DAVID PRESTON, JUDGE
ACTION NO. 16-CR-00091

COMMONWEALTH OF KENTUCKY                                             APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; GOODWINE AND McNEILL, JUDGES.

CLAYTON, CHIEF JUDGE:  James K. Gillman ("Gillman") appeals from the

Martin Circuit Court's order revoking his probation and remanding Gillman to the

Department of Corrections to begin serving a two-year sentence.  Based upon a

careful review of the record and applicable law, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

On September 1, 2016, the Martin County Grand Jury indicted Gillman on charges of first-degree fleeing and evading, first-degree wanton endangerment, second-degree possession of a controlled substance, carrying a concealed deadly weapon, operating a motor vehicle without a license, and speeding twenty-six miles per hour or more over the speed limit.

The incident in question began when a Martin County deputy observed a grey Dodge Dakota pulling out of a parking lot with expired tags. The officer attempted to make a traffic stop after witnessing the vehicle accelerate away at a high rate of speed and pass another vehicle on a double yellow line at a curve, causing the other vehicle to run off the roadway. During the officer's attempted traffic stop, Gillman not only failed to stop but accelerated his vehicle and caused another vehicle to run off the road to avoid a collision. The pursuit ended with Gillman jumping out of his vehicle and the officer apprehending Gillman on foot. After his arrest, the officer found four Suboxone strips in Gillman's wallet and nunchucks under one of the seats of Gillman's vehicle.

Thereafter, on May 18, 2017, Gillman entered a guilty plea to all the charges included in the indictment except for the speeding charge, which was dismissed. On July 6, 2017, the circuit court sentenced Gillman to two years' imprisonment but probated Gillman's sentence on the condition that he serve

ninety days in the county jail. Gillman was under the general conditions of probation, including a prohibition on the use of narcotics, a requirement that he report any arrest within seventy-two hours, a requirement that he report to the probation office regularly, and a requirement that he report any change of address to his probation officer.

After being placed on probation, the record reflects that Gillman repeatedly violated the terms of such probation. On December 3, 2017, he tested positive for Oxycodone and signed a form admitting to his use of such substance. He received a new felony charge of theft by unlawful taking over $500 but under $10,000 in December of 2017. Moreover, he failed to report to his probation officer on four different occasions throughout January of 2018.

Gillman's probation officer ultimately filed a violation of supervision report on January 16, 2019. The report stated that, on January 8, 2019, Gillman was arrested in Pike County and charged with leaving the scene of an accident. Further, the report noted that, on January 11, 2019, while Gillman appeared in the lobby of the probation office, he failed to speak to his supervising officer before leaving or to report his new arrest to his probation officer.

On January 14, 2019, two probation officers attempted to make contact with Gillman at 172 Gilliam Branch Road, the address which Gillman had provided to the probation office at the time that he was placed on probation and the

only address that the office had on file for Gillman. However, not only was Gillman not living there, the residence itself had burned down. Having no other address for Gillman, the officers left a notice directing him to report to the probation office at 8:30 a.m. on January 15, 2019. Gillman failed to report but did leave a message on one of the probation officer's cell phones on January 15, 2019. Gillman's probation officer testified at the probation violation hearing that he had no knowledge of what Gillman said in the message but stated that Gillman gave "excuses" as to why he could not report on that day. Gillman's probation officer phoned Gillman back and left a message instructing him to report at 8:30 a.m. on January 16, 2019. Gillman failed to report at that time.

The Commonwealth thereafter filed a motion to revoke Gillman's probation on January 29, 2019. The circuit court was forced to issue bench warrants when Gillman failed to appear for his scheduled revocation hearing dates on both February 7, 2019, and February 21, 2019. Gillman did not ultimately return into supervision or custody until over seventeen months later on July 31, 2020.

The circuit court held a probation violation hearing on September 3, 2020, and September 17, 2020. On those dates, defense counsel called Gillman's sister, Marsha Siebenick, to testify. She stated that their mother had been suffering from terminal cancer during a portion of the period in question and that Gillman

was her sole caretaker. Their mother ultimately passed away in March of 2019. Siebenick also testified that the residence at 172 Gilliam Branch Road had burned down in approximately 2015 or 2016, several years before the time that Gillman began probation, and that Gillman had lived with his mother at 143 Gilliam Branch Road that entire time.

The court subsequently issued an order revoking Gillman's probation on September 18, 2020. In its order, the court noted that the Commonwealth had filed a motion to revoke Gillman's probation on January 29, 2019, and that Gillman was not arrested until July 31, 2020, some seventeen months after the issuance of the bench warrant for his arrest. Further, the court noted that Gillman's pretrial services report listed his new criminal activity ("NCA") risk level as "a high 9." Finally, the court noted that Gillman had three prior felony convictions, including two for escape in the second degree.

Gillman thereafter filed a motion to alter, amend, or vacate requesting that the court vacate its order revoking Gillman's probation and finding instead that Gillman's probation officers failed to perform their mandatory statutory duties and that such failure led to Gillman absconding. Failing that, Gillman requested that the court make specific findings of fact about his arguments at the probation violation hearing regarding whether the officers had failed in their mandatory duties and whether the term "absconding" as contained in 501 Kentucky

Administrative Regulations (KAR) 6:250 § 2(2)(b)1. was unconstitutionally void for vagueness. The circuit court issued an order denying this motion on October 15, 2020. This appeal followed.

## ANALYSIS

As a preliminary matter, the Commonwealth contends that Gillman waived his right to appeal the circuit court's order revoking his probation because he failed to request in his motion to alter, amend, or vacate certain findings from the court for the errors he now claims. Specifically, the Commonwealth argues that Gillman should have explicitly requested from the circuit court a finding of fact that Gillman "constitute[d] a significant risk to prior victims of the supervised individual or the community at large" as required by Kentucky Revised Statutes (KRS) 439.3106(1).

However, the Commonwealth's argument fails to acknowledge that the circuit court was under a statutory duty to make such a finding as a prerequisite for revoking Gillman's probation. Indeed, the Kentucky Supreme Court has emphasized that the duties imposed by KRS 439.3106(1) are mandatory in that the trial court is required to make a specific finding of fact that the probationer's failure to abide by a condition of supervision constitutes a significant risk to prior victims or the community. *Commonwealth v. Andrews*, 448 S.W.3d 773, 781 (Ky.

2014). Thus, any failure on Gillman's behalf to request specific findings of fact is not a bar to our review.

We next turn to the applicable standard of review in this case. We review a trial court's revocation decision for abuse of discretion. *Id.* at 780. An abuse of discretion occurs when a trial court's decision is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999) (citations omitted).

While a trial court has discretion in probation revocation matters, it must exercise its discretion "consistent with statutory criteria." *Andrews*, 448 S.W.3d at 780. Specifically, before revoking an individual's probation a trial court must make two findings under KRS 439.3106(1): (1) whether the alleged probation violation "constitutes a significant risk to prior victims of the supervised individual or the community at large" and (2) whether the defendant "cannot be appropriately managed in the community[.]"

Multiple Kentucky cases indicate that a trial court need not perfunctorily recite the foregoing statutory language to meet the requirements of KRS 439.3106. For example, in *McClure v. Commonwealth*, a panel of this Court found that, where the record made it clear that the trial court had considered the gravity of the defendant's actions and dangers posed by his addiction, then a trial court's finding that the defendant was a "danger to [the] public" met the statutory

requirement regarding a finding that the defendant was a significant risk to the victim or the community. 457 S.W.3d 728, 733 (Ky. App. 2015).

Similarly, the Kentucky Supreme Court has stated that "perfunctorily reciting the statutory language in KRS 439.3106 is not enough. Rather, there must be proof in the record established by a preponderance of the evidence that a defendant violated the terms of his release and the statutory criteria for revocation has been met." *Commonwealth v. Gilmore*, 587 S.W.3d 627, 630 (Ky. 2019) (internal quotation marks and citation omitted). Thus, even though:

> [t]he statute requires a trial court to consider whether a probationer's failure to abide by a condition poses a significant risk to prior victims or the community at large. Neither KRS 439.3106 []or *Andrews* require anything more than a finding *to this effect* supported by the evidence of record.

*McClure*, 457 S.W.3d at 733 (emphasis added) (internal quotation marks and citation omitted).

In this case, the circuit court stated the following in its written order:

> [h]aving considered all the evidence in this case, the Court concludes that the Defendant cannot be properly supervised in the community at large *and that he is a significant risk to reoffend, thereby creating a risk to the public as a whole*.

(Emphasis added.) We find the foregoing language indicates that the circuit court considered the required factors under KRS 439.3106(1). Indeed, this language is similar to that in *McClure*, where a panel of this Court ruled that a circuit court's

-8-

finding that a defendant was a "danger to [the] public" met the requirement that the trial court finds that the defendant was a significant risk to the victim or the community. 457 S.W.3d at 733.

Moreover, we find that the foregoing finding was supported by the evidence of record. The circuit court noted that Gillman had been charged with a new offense in 2019 which he failed to report to his probation officer; that Gillman had failed to cooperate with all efforts to get him to report to his probation officer between January 11, 2019, and January 16, 2019; that he had previously tested positive for Oxycodone and signed a form admitting to its use; and that he had been charged with felony theft in 2017 after being placed on probation.

The court also noted that testimony during the hearing from Gillman's sister indicated that he had never lived at the address of 172 Gilliam Branch Road, which was the only address that he had provided to his probation officers. Further, while the court acknowledged that Gillman's mother was ill during a portion of the time in question and that Gillman was her only caretaker, it also discussed Gillman's risk levels in his pretrial services report and his prior criminal history, including two convictions for felony escape. Additionally, the court noted that Gillman had absconded from supervision for seventeen months after the bench warrant was issued in connection with the motion to revoke his probation. While

-9-

Gillman's mother's illness may have accounted for two months of Gillman's absconding from supervision, it does not account for the other fifteen months.

Here, the record shows that the circuit court considered the factors in the statute and that there was sufficient evidence to support the court's findings of fact. Thus, the circuit court properly exercised its discretion consistent with KRS 439.3106(1) and *Andrews*, and no abuse of discretion occurred.

Gillman next argues that the circuit court erred in failing to make findings regarding whether the probation officers did not perform their mandatory duty under KRS 439.480(3) and whether such alleged failure contributed to Gillman's absconding from supervision. KRS 439.480(3) states that "[p]robation and parole officers shall . . . [k]eep informed concerning the conduct and conditions of each person under their supervision and use all suitable methods to aid and encourage them to bring about improvement in their conduct and condition[.]"

Specifically, Gillman argues that, because his probation officer did not know that he was caring for his terminally ill mother during a portion of the time that he was absconding from supervision, the probation officer failed to follow his mandatory duties under the statute by not knowing Gillman's condition. We disagree with this argument because, as previously discussed, Gillman's caretaking role only accounted for approximately two to three months of his

overall seventeen-month hiatus from supervision. The ultimate responsibility to comply with the requirements and conditions of his or her probation remains with the probationer. Indeed, the best way for Gillman's probation officer to know about the circumstances surrounding Gillman's mother's illness and any difficulties that the situation was causing him would be for Gillman himself to tell his probation officer. No evidence exists in the record to show that this occurred. The circuit court fulfilled its legal obligation by making the findings of fact required under KRS 439.3106 and such findings were supported by sufficient evidence of record. Thus, we see no abuse of discretion.

Finally, Gillman argues that the circuit court erred in not making findings of fact regarding his argument that the definition of "absconding" in 501 KAR 6:250 § 2(2)(b)1. is unconstitutionally overbroad and vague. However, we agree with the Commonwealth that we may not review this issue. A separate panel of this Court has stated that "before this Court may address a challenge to the constitutionality of a statute *or regulation* . . . the Attorney General must be notified." *Homestead Nursing Home v. Parker*, 86 S.W.3d 424, 425 n.1 (Ky. App. 1999). Further, the Kentucky Supreme Court has stated that it is "the duty of the trial court to refrain from entry of judgment until the notice has been given." *Maney v. Mary Chiles Hosp.*, 785 S.W.2d 480, 482 (Ky. 1990).

In this case, Gillman gave no notice to the Attorney General of Gillman's intent to challenge the constitutionality of the definition of "absconding" contained in the regulation, and thus the circuit court would have been in error to make any findings in that regard. We find no error.

## CONCLUSION

For the foregoing reasons, the probation revocation order entered by the Martin Circuit Court is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Ryan D. Mosley
Prestonsburg, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Jenny L. Sanders
Assistant Attorney General
Frankfort, Kentucky