RENDERED:  NOVEMBER 4, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0229-MR

WILLIAM JAMES LEWIS                                                                APPELLANT

v.
APPEAL FROM FAYETTE CIRCUIT COURT
HONORABLE ERNESTO M. SCORSONE, JUDGE
ACTION NO. 17-CR-00447

COMMONWEALTH OF KENTUCKY                                                      APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  JONES, LAMBERT, AND K. THOMPSON, JUDGES.

THOMPSON, K., JUDGE:  William James Lewis appeals from the Fayette Circuit

Court's order revoking his probation on the basis that the circuit court made

insufficient findings pursuant to Kentucky Revised Statutes (KRS) 439.3106(1).

As the findings were sufficient, and Lewis was repeatedly provided with graduated

sanctions but refused to alter his behavior, we affirm.

In November 2016, police received a tip that Lewis was sending and receiving child pornography on Facebook and executed a search warrant which confirmed his possession and distribution of such images. On May 1, 2017, Lewis was indicted on ten counts of possession or viewing of a matter portraying a sexual performance by a minor and ten counts of distribution of a matter portraying a sexual performance by a minor. These were all Class D felonies.

On December 1, 2017, pursuant to a plea agreement in exchange for a recommendation that the ten counts of distribution of a matter portraying a sexual performance by a minor be dismissed, Lewis agreed to plead to the ten counts of possession or viewing of a matter portraying a sexual performance by a minor, with one year to serve on each count, with the Commonwealth recommending that counts one through eight run consecutive and counts nine and ten run concurrent. The circuit court ordered that Lewis have a comprehensive sex offender pre-sentence evaluation. Lewis requested alternative sentencing, submitting an alternative sentencing plan to the court.

On February 7, 2018, Lewis's final judgment and sentence of probation was entered. The circuit court sentenced Lewis in accordance with the Commonwealth's recommendation, to a total of eight years, but suspended imposition of his sentence, instead placing Lewis on probation for five years. The conditions of probation included that he:

1. Maintain good behavior, refrain from violating the law in any respect and comply with the rules and regulations of the Division of Probation and Parole. The Defendant is to report and follow direction[s] of her [sic] probation officer and permit home visits;

2. Waive confidentiality and consent to release to the probation officer and the court all records, reports, tests and information from all programs ordered or selected by the court or the probation officer;

3. The defendant will consent to any search of her [sic] person or of places or property under her [sic] control when requested by the probation officer or police officer;

. . .

6. Continue to participate in sex offender treatment program [SOTP] and follow any after care recommendations;

7. The Defendant shall have no unsupervised contact with underage children unless it is supervised and approved by Probation and Parole;

. . .

9. Comply with Probation and Parole's conditions for sex offenders;

10. Register as a sex offender with Probation and Parole within 14 days from the date of sentencing (defendant required to sign form);

11. Follow all Probation and Parole's restrictions regarding the use of computers, internet, access, chat rooms, social media and search of all computer hardware/software[.]

Probation and Parole's supplemental conditions of supervision for sex offenders (supplemental conditions) included the following conditions:[1]

> I shall attend, participate, and successfully complete a Sexual Offender Treatment Program. I shall be required to submit, at my own expense, to random polygraph examinations as part of a sex offender treatment program.
>
> I shall not possess any sexually arousing materials including but not limited to:
>
> a. Videos, magazines, books, games
>
> b. Sexual devices or aids
>
> c. Any material that depicts partial or complete nudity or sexually explicit language[.]
>
> I shall not engage in any activity by computer or telephone, including any visual or written, correspondence which is sexually arousing.
>
> I shall have no contact with anyone under the age of eighteen (18), unless it is specifically authorized by my Probation and Parole Officer and treatment provider, if I am in Sexual Offender Treatment. 'Contact' means face-to-face, telephonic, any correspondence including electronic, written, and visual, or any indirect contact via third parties.

---

[1] Unfortunately, these supplemental conditions were never provided in full in the record. Instead, they were quoted in various violation of supervision reports. Sometimes these reports provided a number for these supplemental conditions; sometimes they did not. Accordingly, we simply list the supplemental conditions which Lewis was accused of violating in an order of our choosing without any numbers. We note that it is likely that there were additional conditions that we have omitted with which Lewis complied.

Probation and Parole's computer use agreement for sexual offenders

(computer use agreement) included the following conditions:[2]

By signing below, the above named offender indicates (s)he understands (s)he has the right to refuse consent to the items contained herein and that the offender agrees as follows: computer access to the Internet may pose significant risk of re-offense if not properly managed and the undersigned offender specifically agrees to be fully compliant with the following conditions:

Offender must agree to and submit to electronic device monitoring through Probation and Parole's contracted electronic device monitoring company at his own expense to engage in the following activities:

Web browsing, Email, Producing web content (e.g. YouTube, podcasting or blogging,) internet related telephone communications, file sharing by any method (including but not limited to Peer to Peer, attachments to emails, iTunes.) The offender has no expectations of privacy regarding computer use, or information stored on the computer if monitoring software is installed and understands and agrees that information gathered by said monitoring software may be used against him/her in subsequent administrative or legal proceeding, court actions regarding his/her computer use, and conditions of release.

Offender will provide the Supervising Officer/Designee with a current list of all cell phones, electronic devices, and related equipment used by the offender, including back-up systems. Offender will keep this list current.

---

[2] As with the supplemental conditions, we do not have a complete list of these and simply list those computer use agreement conditions which were quoted in various violation of supervision reports.

Offender agrees that (s)he shall be prohibited from possessing or viewing certain materials related to, or part of, the grooming cycle for his/her crime. Such materials include, but are not limited to, the following:

A. Images of your victim.

B. Stories or images relating to your crime or similar crimes.

C. Images, which depict individuals similar to your victims (e.g. children)

D. Stories written about or for individuals similar to your victim.

E. Materials focused on the culture of your victim (e.g. children's shows or websites).

Later in 2018, the first violation of supervision report (report) was filed, in what would become a series of reports: (1) August 22, 2018; (2) February 5, 2019; (3) May 23, 2019; (4) May 30, 2019; (5) November 8, 2019; (6) June 29, 2020; and (7) October 30, 2020. These reports led to five probation revocation hearings with orders ultimately determining as follows: (1) March 11, 2019 order resulted in probation modification; (2) August 19, 2019 order resulted in no action taken; (3) December 20, 2019 order resulted in probation modification; (4) August 21, 2020 order resulted in no action taken; and (5) January 14, 2021 order terminating Lewis's probation.

In a report dated August 22, 2018, Probation and Parole reported that Lewis violated two supplemental conditions as follows:

> Through the software monitoring system that Mr. Lewis has for his smart phone, a check was completed and revealed that Mr. Lewis had sent text messages relating to sexually explicit messages. Mr. Lewis also had an image of his boyfriend[']s penis on his phone . . . .
>
> Mr. Lewis had engaged in sexually explicit text messages with his boyfriend, that depicted both nudity and written language about engaging in sexual acts.

The report indicated that the circuit court advised that Lewis should be given a verbal warning "given that the violations were related with his fiancé[,]" but noted that if he "continues to violate the supplemental conditions of supervision for sex offenders, along with the computer use agreement for sex offenders then revocation will be requested."

In a Kentucky sexual offender registry notice of non-compliance, dated August 29, 2018, it was indicated that Lewis failed to complete and return the address verification form. However, in an update to this notice dated September 13, 2018, it was noted that Lewis had now updated his address and was "deemed to be in 'Compliance' as required by law."

In the report dated February 5, 2019, the probation officer indicated that Lewis had committed three violations of the terms of his probation. Two of these violations related to the requirements that Lewis complete and not be terminated from a SOTP. The probation officer indicated Lewis was terminated from his SOTP "for multiple reasons including having high-risk pre-offense

behavior and failing to purchase a treatment manual" and for "violating their conditions of treatment contract."

The other violation involved the computer use agreement with the officer explaining a routine phone check with the software monitoring system led to the discovery of improper materials on Lewis's phone:

> Mr. Lewis had searched for photos on Google of prepubescent boys with their shirts off. Mr. Lewis had multiple searches of young boys with their shirts off smiling. It should be noted that this is considered high-risk behavior as the boys found on Mr. Lewis['s] phone were the same age related towards the victim of his crime.

The probation officer additionally noted "Mr. Lewis also verbally admitted to searching 'boys peeing' on his cell phone."

The affidavit by Lewis's probation officer dated February 7, 2019, confirmed these charges. The officer sought revocation of Lewis's probation.

The probation violation hearing was held on March 7, 2019. During a bench conference, the circuit court expressed that its biggest concern was that Lewis kept remaining untreated, that this was a much bigger concern than him reoffending on a device. The circuit court announced in open court as follows:

> I don't think there is any dispute that he did violate the rules of the program. . . . I accept that stipulation. . . . You need to understand that you have got to complete this program. . . . Because even if I put you in the penitentiary you won't get out until you finish this program. . . . So you have got to appreciate the fact that

you have got to complete this program. . . . I can't stress enough that you have got to complete this program . . . or else you'll be sitting in jail for a long, long time.

In the written order modifying probation entered on March 11, 2019, the circuit court stated that Lewis stipulated to violating the terms of his probation. The circuit court found that Lewis violated the conditions of his probation but that he should remain on probation on modified terms, adding the additional terms:

1: Serve 60 days with credit.

2: Report to Probation Parole when released.

3: Must Complete Sex Offender Program.

4: Probation and Parole is given Discretionary Detention.

In a report dated May 23, 2019, the probation officer noted that since Lewis was continued on probation as modified "Lewis has continued to violate the conditions set forth by the Court and remains a high risk of reoffending and a danger to the community while he remains out of custody untreated." The officer explained that Lewis was not yet eligible for re-referral to the Kentucky SOTP for another 120 days, and so on May 8, 2019, the officer instructed Lewis to enter and complete a private SOTP until he could possibly reenter the state one. The officer explained that on May 21, 2019, the officer received notice that Lewis would not be accepted into the only private program in Lexington "due to leaving several

threatening and angry messages for the treatment provider" resulting in a new violation for failure to complete a SOTP.

The officer noted another violation as the monitoring software on Lewis's phone revealed he viewed "boys gymnastics" on YouTube, bringing up several videos of prepubescent male children performing gymnastics and went on to watch a video which showed several young male children without shirts performing gymnastic stunts.

The officer explained that a home visit on May 21, 2019, showed Lewis violated the computer use agreement by failing to provide a current list of his devices as a computer without the monitoring software installed was located during a home visit, and determined to have been used for the "viewing of porn," contained "saved pictures of a naked man and a young boy urinating," and was used for viewing several "Facebook photos of young prepubescent male children without shirts." The officer gave Lewis the benefit of the doubt that he was not the one who viewed these pictures as Lewis and his boyfriend both claimed it was the boyfriend's computer (although Lewis had admitted to using it) but explained that this computer would need to be monitored and Lewis would be held accountable for anything viewed on the device after this point.

The probation officer requested a verbal or written warning for these new violations and discretionary detention with supervisor approval. Discretionary detention of fourteen days was approved.

In a report dated May 30, 2019, the probation officer reiterated the violations from the week before and noted a new violation for failing to comply with the requirement for downloading the monitoring software onto the computer, explaining that although Lewis received instructions as to how to download this software on May 22, 2019 and was instructed to have it downloaded by May 24, 2019, as of a check on May 30, 2019, Lewis had yet to install the monitoring software, "and therefore continues to have access to an unmonitored device that multiple violations have already been discovered by this officer. This poses a serious threat to the community as Mr. Lewis has access to communicate with minors without this officer's knowledge."

In an affidavit signed on May 30, 2019, Lewis's probation officer confirmed these charges and requested that Lewis's probation be revoked.

Lewis's probation revocation hearing was held on June 20, 2019. At that time, it was discussed that the monitoring software had not yet been installed on Lewis's boyfriend's computer. The circuit court continued the hearing for two weeks to allow an opportunity for the software to be installed.

In a special supervision report (special report) dated June 21, 2019, the probation officer indicated that the officer received a text message on a number only available to offenders on that officer's case load which stated it was from one of Lewis's friends and the message used foul and threatening language due to the officer's request that Lewis remain in custody. The officer indicated:

> This officer is not requesting that this message be used to violate Mr. Lewis'[s] Probation but to be used as evidence that should Mr. Lewis be let out before he can be re-assessed for treatment he will continue to violate due to those he associates with. Should Mr. Lewis continue to violate then he will more than likely not be able to re-enter KY SOTP.

In the hearing held on July 3, 2019, it was represented that the non-compliant desktop computer was removed from the residence and that Lewis would be eligible to apply to be accepted back into the state run SOTP as of August 5, 2019. The circuit court ordered that the application be submitted on that date and set a new hearing for August 8, 2019.

In an order entered on July 18, 2019, granting Lewis's release, the circuit court set forth that Lewis would be released on August 5, 2019, and required that he immediately report to Probation and Parole for a new sex offender treatment evaluation. At the August 8, 2019 hearing, the circuit court was informed that Lewis had been accepted back into Kentucky SOTP. On August 19,

2019, an order indicated that no action on the probation revocation would be taken at that time.

In a report dated November 8, 2019, new violations involved Lewis's improper use of Facebook by posting pictures of a shirtless underage male, thereby violating the supplemental conditions against possessing sexually arousing materials and having no contact with anyone under eighteen, and for being terminated from the KY SOTP. The officer recommended revocation, explaining: "Mr. Lewis poses a serious threat to the community as he remains untreated and has exhausted all forms of treatment with Probation and Parole. This officer respectfully recommends revocation so Mr. Lewis can enter and complete SOTP in the institution."

In an affidavit signed on November 12, 2019, the officer explained:

On October 30, 2019, this officer received a community complaint that Mr. Lewis was using Facebook to communicate with minors and posting photos of male minors without their shirts. A check of Mr. Lewis'[s] public Facebook profile depicted posts made earlier in the week of a male minor without his shirt on. That one particular post was made several times in one day . . . . When confronted about his use on Facebook, Mr. Lewis claimed the photos were of a friend who asked him to post them. Mr. Lewis stated he posted the partial nude photos of the underage male as a favor. Due to Mr. Lewis stating the underage male had asked Mr. Lewis to post the photos indicates that Mr. Lewis was in contact with a minor.

The officer also indicated that Lewis was terminated for the second time from the KY SOTP on October 31, 2019, and would not be eligible to be accepted back into the program. The officer indicated that Lewis was terminated due to:

> "violation(s) of provision(s) of Treatment Contract" and "Refusal to change unhealthy preoffense behavior(s)." It was noted in the termination letter that "Mr. Lewis has demonstrated a repeated, consistent pattern of extreme high-risk pre-offense behavior that substantially increases his chances for re-offense."

On December 19, 2019, at the probation revocation hearing, counsel told the circuit court that Lewis was accepted into a private SOTP program, and that Lewis understood this would be his final chance. The circuit court explained to Lewis:

> I don't know if you realize the significance of you not cooperating with these programs, okay? Because you might think you could go back to the penitentiary and get out quickly. You cannot. This thing is going to take you a long time to do it within the institution.

After explaining that Lewis would get a sanction and be required to do the SOTP the circuit court explained further: "And sir, this is your last chance and after that you are going to the penitentiary and you will not get out anytime soon because these programs you can only do at the very end of your sentence."

On December 20, 2019, an order modifying probation was entered. The circuit court noted that Lewis stipulated to violating the terms of his probation

and found that Lewis violated the terms of his probation but should remain on probation on modified terms: "1: Serve 90 days with credit. Defendant shall enter and complete treatment on direction of Probation and Parole."

In yet another report dated June 29, 2020, the probation officer explained that Lewis was currently in violation of his supplemental conditions by possessing sexually arousing materials, including sexual devices or aids, as follows:

> After receiving a community complaint from Mr. Lewis'[s] significant other claims Mr. Lewis was using drugs and had access to an unmonitored device, a home visit was conducted on 06/26/2020. During the home visit a search was conducted in an attempt to locate the reported unmonitored device. During the search, several sexual devices/aids were found throughout Mr. Lewis'[s] belongings. Some of these devices depicted complete nudity as well.

The report indicated that Lewis admitted guilt to this violation and accepted the consequence of serving twenty days of discretionary detention as a graduated sanction.

A revocation hearing was held on August 14, 2020, via Zoom. The probation officer testified and noted that Lewis admitted to his violation, was given a graduated sanction, and had served it. The officer expressed concern that Lewis's SOTP counselor was not holding him accountable for missing sessions and payments.

-15-

The circuit court again lectured to Lewis about the importance of completing the SOTP program, stating, "Mr. Lewis, there is something wrong with you 'cause you don't seem to understand that you have got to do this program." After Lewis indicated that he was working with his counselor on the payment issue, the circuit court again explained:

> You will have a problem if you're not complying with
> the rules. I'll say this again to you, sir. You're not
> getting out from doing the program successfully because
> if, one more slip up and you're going to jail. Because
> I'm not going to put up with it anymore.

On August 21, 2020, an order was entered indicating that no action would be taken at that time.

In a special report dated September 16, 2020, Lewis's probation officer reported problems regarding Lewis's treatment by the private SOTP located in Frankfort, Kentucky, which he began attending in January of 2020. The officer indicated a belief that this program failed to comply with 501 Kentucky Administrative Regulations (KAR) 6:220 Section 2(4)(c)[3] by failing to make a good faith effort to obtain Lewis's previous mental health records despite being told by the officer to have Lewis sign a release of information to allow the program to access his prior SOTP treatment history. The officer indicated a belief that this program also failed to comply with 501 KAR 6:220 Section 2(5)(e) and (5)(f) by

---

[3] The probation officer listed 501 KAR 6:220 Section 2(2)(c) which appears to be a typo.

failing to notify the officer if the offender fails to attend or fails to make a good faith effort to participate in the program, and provide monthly progress reports to the officer, as despite Lewis's enrollment in January, the private SOTP program had only submitted one progress report (dated August 28, 2020) for the entire year; while this progress report stated that Lewis had missed classes, it did not state how many or when, or how Lewis was held accountable for these absences.

In consequence, the officer indicated that on September 2, 2020, Lewis was directed to contact a private clinician in Somerset, Kentucky, no later than September 4, 2020. However, "[t]his officer was notified that Mr. Lewis did not make contact with the listed number for the clinician until September 15, 2020."

In a report dated October 30, 2020, the probation officer recounted:

> A home visit was conducted on October 28, 2020 in response to a community complaint that Mr. Lewis and his boyfriend James Grimes had been using drugs and making threats against another parole officer. Upon entering the home Mr. Lewis and his boyfriend James Grimes were detained due to the threatening and harassing nature of the complaints and threats received by another officer at probation and parole. It was apparent that there were multiple smart devices in the apartment due to a smart phone being found in the living room and multiple phone chargers throughout the home. A search was conducted by Probation and Parole officers with assistance from the Lexington Police Department. The following items were found in the apartment: (14) .38 spl, (10) 9mm, (2) .380 acp, (2) .22 lr, (1) .25 acp, (1) .45 acp, (1) .32 s&w, Black Motorola Razor cell phone,

Black Lenovo smart tablet, Narcan, 1 baby diaper, 3 sex lubes, 4 plastic penises, black brass knuckles, 1 small piece of weed, 1 white visa debit card belonging to Mark Grimes. Mr. Lewis was arrested for probation violations[.]

The officer requested revocation of Lewis's probation indicating Lewis: (1) violated the computer use agreement by not providing any information regarding the possession of a smart tablet; (2) violated the supplemental conditions of not possessing sexually arousing materials by having a tablet that "contained hundred[s] of nude images and videos. Along with an extensive search history of various pornography[;]" (3) violated the supplemental conditions of not possessing sexually arousing materials by having possession of several sexual lubricants along with four small plastic penises; (4) violated the conditions of probation by being terminated from a SOTP; and (5) violated the conditions of probation by possessing the marijuana. The officer indicated that "Mr. Lewis cannot be effectively supervised in the community and is unwilling to successfully complete Sex Offender Therapy as required. This is the fifth termination from a Sex Offender Therapy Program for Mr. Lewis."

In an affidavit signed on November 2, 2020, Lewis's probation and parole officer indicated that as to the SOTP termination "Mr. Lewis had cancelled three separate appointments to begin SOTP with this counselor [Samantha Baker]. Ms. Baker stated that Mr. Lewis would not be accepted into their private SOTP

and had he been accepted these current violations [which the officer informed Baker about] were serious enough for termination from the program."

On December 9, 2020, the circuit court held its final revocation hearing for Lewis via Zoom, which ended up being continued until December 16, 2020, as Lewis's counsel was not familiar with the report. The probation officer testified that he took over the case because threats had been made by others against the prior officer and a day after he received the case a complaint was called in indicating that there were drugs and weapons in the apartment. He testified consistently with the report about what was discovered in the apartment, including the rounds of ammunition, indicating those were sitting out on a shelf in the kitchen/dining room area, and that the debit card belonged to the person who had made the report. The officer testified that the baby diaper was located in the only apartment bed.

The officer explained that as to the SOTP, Lewis had three separate appointments and kept canceling, and that given that and Lewis's violations that the program would not accept him. The officer acknowledged that Lewis stated he had transportation problems.

Lewis called his boyfriend to testify, but due to connection issues with Zoom, the boyfriend was not able to testify; Lewis was allowed to make a proffer about what the boyfriend would testify. Counsel indicated that the boyfriend

would testify that Lewis made every effort to attend the SOTP program in Somerset, the ammunition and tablet belonged to a third party that was staying with them, the sex toys and condoms belonged to the boyfriend and were used with Lewis in their consensual relationship, and that Lewis could maybe live in Louisville with his aunt. Counsel also indicated that he had spoken to the counselor of the Frankfort SOTP and that Lewis could go back to that program as she had not kicked him out of that program.[4] The circuit court indicated that it would accept the proffered testimony as if the boyfriend had testified.

The circuit court announced:

Enough is enough with Mr. Lewis. I have bent over backwards, backwards for this gentleman to just get his act together and just finish one of these programs. That's all I wanted. I didn't want to send him to the penitentiary, but he keeps messing it up. I, you know, I can't continue him on probation. It'd make, it'd make a mockery of the system after this he's, he's not able to finish this sex offender program, you know, and I leave him on probation, it's too much [counsel]. I'm revoking him.

I'm revoking you Mr. Lewis. No more chances. You're going to have to serve your time. I'm sorry, but you just will not do what I've asked you to do.

---

[4] This was the program that the probation officer removed Lewis from attending as the program failed to report monthly on Lewis's progress and apparently had no consequences for him when he missed sessions.

Lewis interjected that he never got the proper address for the SOTP in Somerset, and he drove around for an hour looking for it. He indicated he would be willing to return to the Frankfort SOTP.

The circuit court indicated, "I've had little tabs for every hiccup on your case and yours takes the cake. I've bent over backwards for ya. It's the end of the road man. I'm sorry."

The order revoking probation was filed on January 14, 2021. The order indicated that Lewis stipulated to violating the terms of his probation. The circuit court then found that "the Defendant has violated the terms of his probation. The Defendant's failure to abide by a condition of supervision constitutes a significant risk to the community and the Defendant cannot be managed in the community."

Lewis argues that the circuit court did not make the necessary factual findings to revoke his probation, the KRS 439.3106(1) factors were not analyzed, and the evidence does not support revocation. We strongly disagree.

We review the circuit court's decision to revoke probation for abuse of discretion. *Commonwealth v. Andrews*, 448 S.W.3d 773, 780 (Ky. 2014); *Helms v. Commonwealth*, 475 S.W.3d 637, 644 (Ky.App. 2015). "[W]e will not hold a trial court to have abused its discretion unless its decision cannot be located within the range of permissible decisions allowed by a correct application of the

facts to the law." *McClure v. Commonwealth*, 457 S.W.3d 728, 730 (Ky.App. 2015).

KRS 439.3106 provides in relevant part as follows:

(1) Supervised individuals shall be subject to:

(a) Violation revocation proceedings and possible incarceration for failure to comply with the conditions of supervision when such failure constitutes a significant risk to prior victims of the supervised individual or the community at large, and cannot be appropriately managed in the community; or

(b) Sanctions other than revocation and incarceration as appropriate to the severity of the violation behavior, the risk of future criminal behavior by the offender, and the need for, and availability of, interventions which may assist the offender to remain compliant and crime-free in the community.

"KRS 439.3106(1) requires trial courts to consider whether a probationer's failure to abide by a condition of supervision constitutes a significant risk to prior victims or the community at large, and whether the probationer cannot be managed in the community before probation may be revoked." *Andrews*, 448 S.W.3d at 780.

For purposes of review, rather than speculate on whether the court considered KRS 439.3106(1), we require courts to make specific findings of fact, either written or oral, addressing the statutory criteria. A requirement that the court make these express findings on the record not only helps ensure reviewability of the

-22-

court decision, but it also helps ensure that the court's decision was reliable. Findings are a prerequisite to any unfavorable decision and are a minimal requirement of due process of law.

*Lainhart v. Commonwealth*, 534 S.W.3d 234, 238 (Ky.App. 2017) (internal quotation marks and citations omitted). We note that "conclusory statements on the preprinted forms, related to the criteria in KRS 439.3106(1)" are "not sufficient to meet the mandatory statutory findings necessary to revoke a defendant's probation." *Walker v. Commonwealth*, 588 S.W.3d 453, 459 (Ky.App. 2019). *See Helms*, 475 S.W.3d at 645 (explaining "[i]f the penal reforms brought about by HB [House Bill] 463 are to mean anything, perfunctorily reciting the statutory language in KRS 439.3106 is not enough.").

In reviewing the circuit court's decision to revoke Lewis's probation, we must consider and answer two intertwined questions: "Whether the evidence of record supported the requisite findings that [the probationer] was a significant risk to, and unmanageable within, his community; and whether the trial court, in fact, made those requisite findings." *McClure*, 457 S.W.3d at 732.

Having thoroughly reviewed all the prior violations, the prior revocation hearings, and the circuit court repeatedly emphasizing to Lewis that he needed to complete an SOTP program, along with the repeated discussion about how Lewis was a risk to the community because he kept committing violations and

-23-

was not getting the appropriate treatment, we are confident that the outcome was correct and amply supported.

Lewis repeatedly admitted to his past violations, both to his probation officer and the circuit court.[5] Lewis had attempted to complete a SOTP five different times and had problems each time, resulting in his removal from two programs for violating their terms and not being accepted into two other programs due to his actions of acting out, not attending, and continuing to engage in inappropriate behavior. While Lewis's removal from the Frankfort program may not have been his fault, even regarding this program, he was not regularly attending. At best, the proffered evidence indicated that his boyfriend thought Lewis was trying to attend the Somerset SOTP, but did not contravene that Lewis failed to attend at all.

The circuit court told Lewis again and again that he needed to complete the SOTP or he would have to do it in prison. The circuit court repeatedly applied graduated sanctions to try to manage Lewis in the community safely. We commend the circuit court for attempting to apply graduated sanctions in the way that we believe the General Assembly intended in enacting House Bill

---

[5] While Lewis did not formally admit to the last probation violation, any finding that he did was harmless as there was overwhelming evidence to conclude that he had violated the terms of his probation over and over and over again.

463. 2011 Ky. Acts ch. 2, § 59 (HB 463) (eff. Jun. 8, 2011). As noted in *Andrews*, 448 S.W.3d at 776, "[w]ith the enactment of HB 463, the legislature adopted a sentencing policy intended to 'maintain public safety and hold offenders accountable while reducing recidivism and criminal behavior and improving outcomes for those offenders who are sentenced.' KRS 532.007(1)."

However, each time after Lewis served a sanction and was released, he failed to complete a SOTP and repeated to commit violations. There was no evidence that if Lewis was continued on probation that his intractable behavior would change, and he would start to conform his behavior to the rules. Even during his final probation revocation hearing, Lewis kept making excuses. Even if the circuit court accepted that Lewis could not find the Somerset SOTP location the first time, this did not explain why he repeatedly canceled appointments.

In reviewing the hearings, the circuit court's repeated pronouncements and its oral findings, and the written order, it is evident that the circuit court made a finding that because Lewis could not complete a SOTP, despite every chance he had been given and the imposition of repeated graduated sanctions, that this was a violation of his probation, that his failure to comply with the condition that he complete a SOTP constituted a significant risk to the community, and that the only way Lewis could possibly complete a SOTP was to do it while incarcerated. While graduated sanctions ought to be attempted, there is no requirement that the circuit

court repeat trying what has already failed until a defendant has served out his probation.

Ultimately, under KRS 439.3106 circuit courts retain the discretion to determine when probation ought to be revoked. *Andrews*, 448 S.W.3d at 777. Whatever personal problems Lewis had, he was given ample opportunities to work them out yet continued down the same road. Although it may have failed with Lewis, we are confident that the circuit court did everything it could to try to correct Lewis's actions in the community but that it also acted appropriately when it became apparent that this was no longer possible.

Accordingly, we affirm the Fayette Circuit Court's order revoking Lewis's probation.


ALL CONCUR.


BRIEFS FOR APPELLANT:

Aaron Reed Baker
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Thomas A. Van de Rostyne
Assistant Attorney General
Frankfort, Kentucky