RENDERED: MAY 1, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1214-MR

ROBERT MYERS                                              APPELLANT

APPEAL FROM LOGAN CIRCUIT COURT
v.        HONORABLE JOE W. HENDRICKS, JR., JUDGE
ACTION NO. 22-CR-00331

COMMONWEALTH OF KENTUCKY                                   APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CETRULO, COMBS, AND L. JONES, JUDGES.

JONES, L., JUDGE: Robert Myers brings this appeal from a September 17, 2024 Order Revoking Probation and Amended Final Judgment of Imprisonment entered in the Logan Circuit Court. We affirm.

Myers was indicted by a Logan County Grand Jury upon one count of Assault in the Second Degree (Domestic Violence), Unlawful Imprisonment in the First Degree, Strangulation in the First Degree, and Persistent Felony Offender in the First Degree. Pursuant to a plea agreement with the Commonwealth, Myers

pleaded guilty to Strangulation in the First Degree in exchange for dismissal of the remaining charges and a recommendation of ten-years' imprisonment probated for a period of five years. By Judgment of Conviction on Guilty Plea entered on March 10, 2023, Myers was adjudicated guilty of Strangulation in the First Degree and sentenced in accordance with the plea agreement to ten-years' imprisonment probated for five years. A condition of Myers' probation was "no unwanted contact" with Madison Davenport. Record (R.) at 54.

On June 7, 2023, a Probation and Parole Officer filed an affidavit alleging Myers had violated the terms of his probation by having contact with the victim and having a new felony arrest. The Supervision Report listed the probation violation as follows: "On May 25, 2024, Myers was arrested in Tennessee case 83GS1-2023-CR-5170, Aggravated Domestic Felony, a Tennessee Class C Felony." R. at 64. The Supervision Report was prepared by a Kentucky Probation and Parole Officer, but included the Tennessee Affidavit of Complaint which stated:

> On May 20, 2023[,] at approximately 2113 Hours I, Deputy Searcy, was dispatched to a domestic located at 619 Shun Pike, Cottontown, TN 37048. While en route[,] dispatch advised me that the caller stated she was assaulted by her boyfriend 'Robert Myers." The caller stated Robert threw a charger and hit her in the eye. Robert Myers then left the scene in a blue Dodge Truck.
>
> Upon my arrival at 619 Shun Pike, I witnessed the caller 'Madison Davenport' standing beside her vehicle in front

of the residence. As Madison was speaking to me she was observed wearing sunglasses. Madison stated she was outside playing solitaire when Robert came up to her and began arguing with her. I asked Madison what the red scratch on her chest was from and Madison stated it was from when she was trying to get away from Robert when a small physical confrontation ensued. I then asked Madison to remove her sunglasses and observed a small laceration beneath her right eye and her right eye sclera to be blood red. Madison began to deny the injuries was [sic] from Robert but then later admitted he did it. Madison stated 2 days ago (5/18/2023) Robert grabbed an apple watch charger and swung it at her hitting her in the face. Madison stated she could not see out of her eye and was in fear she would lose her eye. Madison said at the time of the injury her eye ball itself was bleeding. Upon observing the entirety of Madison's sclera there was no white on the sclera observed. The entirety of the eye ball was blood red and appeared it had bled. Madison then stated Robert took her car seat so she unable to leave with her son. Madison was in fear due to past incidents with Robert that he would assault her and that is why Madison called the police.

R. at 64. A warrant of arrest was issued and served upon Myers on June 5, 2023.

Myers' bond was set at $25,000 and a surety bond was subsequently posted.

Myers appeared before the trial court and by calendar order entered June 21, 2023,

"Probation modified to prohibit **all** contact with Madison Davenport whatsoever.

Not to be within 500 [feet] of Madison Davenport or her place of residence." R. at

89 (emphasis added).

On January 30, 2024, a Probation and Parole Officer filed an affidavit

wherein it was averred that Myers had a new felony arrest in Tennessee. More

specifically, the affidavit quoted the citation that had been issued in Tennessee and stated as follows:

> New Felony arrest:
> On December 9, 2023, Mr. Myers was arrested by the Sumner County Sheriff's Office and charged with AGG ASSAULT (DOMESTIC). The citation reads as follows: On Saturday December 9, 2023[,] at approximately 1030 hours I was dispatched to the area of 4006 Highway 76 to a possible domestic assault. I was advised that the victim was walking westbound on Highway 76. Upon arrival Sgt[.] Mahaney had made contact with victim, Madison Davenport, and had her completing a written statement. Madison stated she was at her residence of 116 Shun Pike when she woke her [b]oyfriend Robert Myers, up for a ride to work. She stated that he was very agitated that she had woken him up. She stated they had a verbal altercation but then he began driving her to work. [B]ecause of the verbal altercation[,] [s]he stated at some point she got out of the truck and began walking on Highway 76 towards work. She stated that he drove [past] her several times yelling at her. She stated at one point he stopped and began physically trying to remove her cellphone from her person. She stated she was able to get away from him and he left the area due to multiple people witnessing what was going on as they drove by. She stated he shouted "Your ass is grass" to her as he was driving away.
>
> New misdemeanor arrest
> On 12/27/2023[,] Robert Myers was arrested by the Sumner County Sheriff's Office on the following charges:
> UNLAWFUL DRUG PARAPHERNALIA SIMPLE POSS SCH VI
> The affidavit states that officers located Marijuana, pipes for smoking drugs and an unused needle in Mr. Myers['] pocket.

January 30, 2024, Affidavit of Probation and Parole, R. at 68. A warrant of arrest was issued for Myers on January 30, 2024, and he was subsequently arrested on June 14, 2024.

An Order Revoking Probation and Amended Final Judgment of Imprisonment (Order Revoking) was entered September 17, 2024, and provided:

> Prior to addressing the proceedings held today on September 16, 2024, this Court takes notice of the prior revocation proceedings held on July 21, 2023[,] where the Commonwealth moved to revoke the Defendant's probation. The Commonwealth called the probation officer who testified as to the report of Tennessee law enforcement officers. The victim of the Defendant's convictions for Strangulation in the First Degree, in the original action, Madison Davenport, on June 5, 2023[,] complained to law enforcement officers in Sumner County, Tennessee that the Defendant on May 18, 2023[,] approached her while she was playing solitaire and began arguing with her. That he grabbed an Apple Watch charger and swung it at her face causing an injury to her eyeball where she feared that she might lose her vision. Law enforcement observed these injuries and reported them. The report clearly indicates that this was an intentional act of domestic violence by Myers against victim.
>
> When Ms. Davenport appeared in court to testify at the July 21, 2023, hearing she stated that the injury was unintentional, that she found him talking to his ex-girlfriend and that [Myers] grabbed the charger out of the wall and the contact to her face was unintentional. This Court found that there was not sufficient evidence to prove the new offenses for purposes of revoking his probation but that because Madison Davenport was either the victim of further acts of domestic violence by [Myers] and testified falsely in the revocation

proceedings or alternatively had exaggerated or even lied to the police to have him wrongly charged with criminal offenses that he was arrested for that Ms. Davenport was someone of harmful character and that continued contact with her was not in the interest of the Defendant's rehabilitation. The Court then modified his probation "to prohibit all contact with Madison Davenport whatsoever" and further that he was "not to be within 500' of Madison Davenport or her residence."

On December 9, 2023[,] Sumner County, Tennessee Sheriff's Deputies arrested the Defendant for Agg Assault Domestic Violence when at 10:30 a.m. the deputy was dispatched to 406 Highway 76 to a possible domestic assault. The Deputy then was told the victim was walking westbound on Highway 76. Madison Davenport told the deputy that she was at her residence at 116 Shun Pike when she woke her boyfriend Robert [Myers], up so he could drive her to work. While on the way to work they got into a verbal altercation and she got out of the truck and started walking. [Myers] then drove by her several times and then stopped and began to try to physically remove her cellphone from per person. She was able then to get away and [Myers] left the area because multiple people were witnessing the altercation. As [Myers] was driving away from her, he shouted "Your ass is grass."

**The Court notes that much of the evidence at this point is double or potentially triple hearsay and largely relies upon the credibility of a witness whose willingness to tell the truth appears largely to depend upon the circumstances of the moment. This court would be reluctant to place much weight on her testimony as to whether or not the criminal acts charged by the Sumner County Sheriff's Deputy were actually committed by [Myers]. However, her statements contain implicit facts which carry the ring of truth, namely: (1) that [Myers] had continued to have contact with Davenport on a regular basis since**

**this court's July 20, 2023 order, (2) that he for at least one night (December 8, 2023) shared a residence with her, and (3) That he occupied a motor vehicle with her on the December 9, 2023**.

This is further corroborated by the recorded jail phone calls. According to the testimony of the Commonwealth's Attorney's Detective, utilizing the Logan County Jail's inmate phone system, she accessed [Myers'] phone calls from June 1, 2024[,] through September 16, 2024[,] and during that time [Myers] called a [sic] Davenport's known phone number approximately 90 to 100 times. The Detective testified that one of those phone calls [Myers] calls Madison Davenport by name. The Commonwealth introduced the recording of a phone call made on June 14, 2024[,] from [Myers'] inmate account. In this phone call Davenport expresses terms of endearment toward [Myers], and there is discussion of [Myers'] anxieties regarding Davenport's past unfaithfulness and his anticipation that she will not wait faithfully for him until he is released from the bonds of his incarceration. They discuss Davenport's efforts to help [Myers] find treatment programs which he can offer as an alternative to further imprisonment.

In summary, not only are the phone calls themselves direct evidence of [Myers'] continuous violation of the no contact condition set down by this court on July 21, 2023, but they indirectly confirm that [Myers] violated this condition at the time Davenport gave statements alleging domestic violence by him on December 9, 2023. THIS COURT THEREFORE FINDS BY PREPONDERANCE OF THE EVIDENCE THAT [MYERS] VIOLATED THE CONDITION OF PROBATION "TO PROHIBIT ALL CONTACT WITH MADISON DAVENPORT WHATSOEVER" AND "NOT TO BE WITHIN 500' OF MADISON DAVENPORT OR HER RESIDENCE."

The no contact condition was not a minor matter in this case. It went to the heart of the threat posed by [Myers] to the victim and was designed to prevent the very circumstance for which [Myers] no[w] finds himself before the bar of this court. Under the best of circumstances his contact with Davenport results in his arrest and prosecution for domestic violence where the allegations are not proven or at worse it resulted in his conviction for a Class C Felony involving the strangulation of the object of his affection. These occurrences where contact was made were not incidental, unintentional, or minor but demonstrate a determined persistence to frustrate this court's efforts to both protect the victim and prevent [Myers] from reoffending. His conduct has left the court to conclude that there is no court order which will prevent these kinds of circumstances from reoccurring except for one which places [Myers] in the custody of the Department of Corrections.

This Court further finds that under the circumstances as found by this court that the violations both constitute a significant risk to the victim in this case and to the community at large.

September 17, 2024 Order Revoking at 2-4 (emphasis added); R. at 85-88. The Order Revoking Myers' probation also imposed the ten-year sentence of imprisonment that had been previously probated. This appeal follows.

Our standard of review upon a trial court's decision to revoke probation is abuse of discretion. *Embry v. Commonwealth*, 561 S.W.3d 360, 363 (Ky. App. 2018) (citation omitted). Pursuant to the abuse of discretion standard, we will not disturb the trial court's ruling unless the "decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v.*

-8-

*Andrews*, 448 S.W.3d 773, 780 (Ky. 2014) (citation omitted).  And the trial court must exercise its discretion consistent with the statutory criteria of KRS[1] 439.3106.

Myers contends the trial court abused its discretion by finding he posed a significant risk to Davenport and he could not be managed appropriately in the community.  We disagree with Myers' contention.

KRS 439.3106 governs sanctions, including revocation of probation, for individuals on probation and provides:

> Supervised individuals shall be subject to:
>
> (1) Violation revocation proceedings and possible incarceration for failure to comply with the conditions of supervision when such failure constitutes a significant risk to prior victims of the supervised individual or the community at large, and cannot be appropriately managed in the community; or
>
> (2) Sanctions other than revocation and incarceration as appropriate to the severity of the violation behavior, the risk of future criminal behavior by the offender, and the need for, and availability of, interventions which may assist the offender to remain compliant and crime-free in the community.

And in a probation revocation hearing, "the Commonwealth need only prove by a preponderance of the evidence that a probationer has violated the terms of probation.  *Commonwealth v. Lopez*, 292 S.W.3d 878, 881 (Ky. 2009).

---

[1] Kentucky Revised Statutes.

In the case *sub judice*, the trial court clearly considered an array of factors and explicitly considered the criteria set forth in KRS 439.3106. The court recognized that much of what was contained in the affidavits to support revoking Myers' probation was double or triple hearsay. However, the court concluded that even without considering the hearsay, it was abundantly clear that Myers had violated the conditions of probation. The court specifically noted Myers' failure to comply with the conditions of his probation including: (1) having contact with the victim since the court's July 20, 2023 order; (2) having contact with the victim for at least one night, on December 8, 2023, when they shared a residence; and (3) occupying a motor vehicle with the victim on December 9, 2023. The court also relied upon the testimony of the Commonwealth's Attorney's Detective that Myers made 90-100 calls from the jail to a number known to belong to the victim. Myers also called the victim by name during at least one of these conversations. A recording of a call Myers made to the victim was played wherein the two discussed their relationship, including the victims' efforts to locate a treatment program to help Myers avoid further incarceration.

The trial court concluded these phone calls alone constituted direct evidence that Myers violated the terms of his probation, the violations resulted in a significant risk to his victim, and Myers could not be managed appropriately in the community. The trial court gave Myers a second chance after the first probation

-10-

violation was reported by merely amending the language in the Order of Probation to preclude "all contact" with the victim rather than precluding only "unwanted or criminal contact" with the victim. Unfortunately, Myers continued to have contact with Ms. Davenport. As such, we believe the trial court fully complied with the criteria set forth in KRS 439.3106 and did not abuse its discretion by revoking Myers' probation.

We view any remaining contentions of error as moot or without merit.

For the foregoing reasons, we affirm the September 17, 2024 Order of the Logan Circuit Court revoking Myers' probation.

ALL CONCUR.

BRIEF FOR APPELLANT:

Steven Buck
Department of Public Advocacy
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Todd D. Ferguson
Assistant Attorney General
Frankfort, Kentucky