RENDERED: JUNE 2, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky
# Court of Appeals

NO. 2021-CA-1324-MR

HOWARD GRIBBINS                                         APPELLANT


v.
APPEAL FROM MARION CIRCUIT COURT
HONORABLE KAELIN G. REED, JUDGE
ACTION NOS. 07-CR-00201, 07-CR-00202, 07-CR-00203,
07-CR-00204, 19-CR-00155, 19-CR-00156, 20-CR-00054,
AND 21-CR-00079


COMMONWEALTH OF KENTUCKY                                 APPELLEE

AND

NO. 2021-CA-1327-MR

HOWARD GRIBBINS                                         APPELLANT


v.
APPEAL FROM MARION CIRCUIT COURT
HONORABLE KAELIN G. REED, JUDGE
ACTION NO. 07-CR-00200


COMMONWEALTH OF KENTUCKY                                 APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, COMBS, AND LAMBERT, JUDGES.

CALDWELL, JUDGE: Howard Gribbins ("Gribbins") appeals from the Marion Circuit Court's order revoking probation and imposing a combined sentence of seventeen (17) years' imprisonment. We affirm.

## FACTS

Gribbins has an extensive criminal history. In 2007, he was indicted for five counts of burglary in the second degree, one count of criminal mischief, and two counts of theft by unlawful taking over $300.[1] He entered a guilty plea to all charges and was sentenced to seven (7) years' imprisonment, which sentence was probated for five (5) years.

Between 2011 and 2013, Gribbins was charged with several violations of probation and new criminal offenses, which ranged from traffic infractions to felony charges. Each time he violated his probation or gained a new charge he was sanctioned, but his probation was never revoked.

While still serving the probated sentence, Gribbins was indicted in 2019. He faced one count of possession of a controlled substance

---

[1] The statute in effect at the time of Gribbins' arrest and prosecution provided that theft of property of another with a value more than $300 was a Class D felony. "(2) Theft by unlawful taking or disposition is a Class A misdemeanor unless the value of the property is three hundred dollars ($300) or more, in which case it is a Class D felony[.]" Kentucky Revised Statutes ("KRS") 514.030, 2000 Kentucky Laws Reg. Sess. Ch. 233 (H.B. 501).

(methamphetamine), one count of terroristic threatening in the third degree, two counts of burglary in the second degree, one count of burglary in the third degree, three counts of theft by unlawful taking over $500, one count of trafficking in a controlled substance (methamphetamine), one count of trafficking in marijuana, one count of possession of drug paraphernalia, and being a persistent felony offender in the first degree.

In 2020, he faced indictments for one count of trafficking in a controlled substance (methamphetamine). And in 2021, he was charged with one count of trafficking in a controlled substance (methamphetamine), one count of trafficking in marijuana, and one count of possession of drug paraphernalia.

While waiting for the resolution of all of these new charges from 2019-2021, he was released by the court to residential treatment. While at the treatment center, he tested positive for fentanyl and ended up leaving the treatment center against medical advice. He was then ordered to a different residential treatment center, but he left that center after only five days, against medical advice once again.

He appeared in court in April of 2021 and entered pleas to the pending charges, with some of the charges being dismissed by the prosecution. Gribbins was sentenced to seventeen (17) years to serve, probated for five (5) years. This sentence concerned the charges to which he pleaded guilty that day as well as

previous sentences which had been previously probated. A condition of his probation was that he successfully complete a long-term residential drug treatment program.

As he did previously, Gribbins once again left the residential treatment center before successful completion of the program and against medical advice. The Division of Probation and Parole was notified that Gribbins had failed to complete the program and was returned to his home by the center several days later. A warrant was then issued for his arrest in September of 2021.

Upon his arrest, the Commonwealth filed a motion to revoke his parole. Attached to the motion was the Violation of Supervision Report authored by his probation officer. That Report outlined the present violations, as well as outlining his criminal history and prior violations of probation and the sanctions imposed for those violations.

A probation revocation hearing was held in late September. The probation officer testified concerning the present allegations of probation violation, which consisted of testing positive for fentanyl and absconding for failure to keep in contact with her after he left the treatment program. Gribbins also provided testimony at the hearing. He admitted to having left the treatment program without permission, but denied having used fentanyl.

The Marion Circuit Court entered an order revoking his probation and imposing the seventeen (17) year sentence. He appeals the revocation of his probation and the imposition of the sentence of imprisonment. We affirm.

## STANDARD OF REVIEW

In 2011, the Kentucky General Assembly passed what is commonly referred to as "House Bill 463." This legislation made changes to sentencing policy aiming to reduce recidivism and criminal conduct. *See* KRS 532.007(1). One of the changes contained in House Bill 463 was the creation of KRS 439.3106:

> Supervised individuals shall be subject to:
>
> (1) Violation revocation proceedings and possible incarceration for failure to comply with the conditions of supervision when such failure constitutes a significant risk to prior victims of the supervised individual or the community at large, and cannot be appropriately managed in the community; or
>
> (2) Sanctions other than revocation and incarceration as appropriate to the severity of the violation behavior, the risk of future criminal behavior by the offender, and the need for, and availability of, interventions which may assist the offender to remain compliant and crime-free in the community.

Following the enactment of KRS 439.3106, the Kentucky Supreme Court determined that before revoking probation, a trial court should consider

-5-

whether "1) the probationer's failure to abide by the conditions of supervision constitutes a significant risk to prior victims or the community; and 2) the probationer cannot be managed in the community." *Commonwealth v. Andrews*, 448 S.W.3d 773, 776 (Ky. 2014).

So, in determining whether to revoke probation, a trial court must first determine that the probationer cannot be managed in the community and presents a significant risk to the community. On review of a trial court's order revoking probation, we must determine whether the *Andrews* factors were considered by the trial court before turning to a determination of whether the decision to revoke was an abuse of discretion.

> The first step in analyzing a probation revocation claim is to determine whether the trial court properly considered KRS 439.3106(1) before revoking the defendant's probation. *Andrews*, 448 S.W.3d at 780. If the trial court considered the statute, we then review whether its decision to revoke probation was an abuse of discretion. *Id.* Accordingly, "we will disturb a ruling only upon finding that 'the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles.'" *Id.* (quoting *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999)).

*Commonwealth v. Gilmore*, 587 S.W.3d 627, 629 (Ky. 2019).

## ANALYSIS

At the hearing, the trial court acknowledged that sentencing someone to seventeen (17) years' imprisonment for absconding for three (3) months seemed

an overreach, but stated that there was no one more deserving of revocation than Gribbins if his entire criminal history could be considered. The trial court stated it was not sure what the standard was as far as whether it could consider past criminal history and reserved ruling pending researching the question.

In the order ultimately issued revoking Gribbins' probation, the first case cited by the court was *Williams v. Commonwealth*, 462 S.W.3d 407 (Ky. App. 2015). In *Williams*, a panel of this Court explained that in *Andrews*, *supra*, the Kentucky Supreme Court made it clear that a trial court is not to simply consider only the present violations of probation, but also the listed considerations in the Regulations. *Id.* at 411-12.

> *Andrews* holds that a trial court must address more than the fact of the violation of the terms of probation; in addition, it must consider whether the probationer constitutes a significant risk either to a victim or to the community at large. And it must evaluate whether or not he can be managed in that community. *Andrews* requires both the trial court and the Department of Corrections to consider a range of sanctions graduated in severity as reflected by the level of risk posed by the supervised individual:
>
> > The language of KRS 439.3106(2) regarding "other sanctions" loosely tracks KRS 439.3107, which directs the DOC to adopt a system of graduated sanctions for "the most common types of supervision violations." Under 439.3108(1)(a), the DOC, "notwithstanding any administrative regulation or law to the contrary," has the authority to modify the conditions of probation "for the limited purpose of imposing graduated

sanctions[.]" The guidelines for applying graduated sanctions are set forth in 501 Kentucky Administrative Regulations ("KAR") 6:250. When imposing graduated sanctions under this regulation, a probation officer must first consider various factors including:

(a) Offender's assessed risk and needs level;

(b) Offender's adjustment on supervision;

(c) Severity of the current violation;

(d) Seriousness of the offender's previous criminal record;

(e) Number and severity of any previous supervision violations; and

(f) Extent to which graduated sanctions were imposed for previous violations.

*Id.*

In the order, the trial court found that Gribbins had violated probation presently by absconding and failing to complete ordered treatment. Further, the court found that Gribbins' failure to follow the terms of probation numerous times indicated he presented a significant risk to the community at large and, because of his previous instances of noncompliance, he could not be appropriately managed in the community. Because of the severity of the violations committed and the risk of future criminal behavior, the court held sanctions were not appropriate and imprisonment was necessary because Gribbins needed correctional treatment.

The trial court's order was appropriate and just. The judge determined that graduated sanctions were not appropriate because Gribbins could not be adequately managed in the community and presented a significant risk to the community. We find that the trial court did not abuse its discretion by determining revocation of Gribbins' probation was necessary, not only because of the present violations, which were sufficient on their own to support the decision to revoke, but due to his repeated failure to follow the orders of court and the dictates of his probation. In *Andrews*, it was made clear that past criminal history cannot be the only reason for revocation, but can be considered in determining the risk of allowing an offender to remain on probation. 448 S.W.3d at 780 ("While [the probationer's] criminal history could not be the sole basis for his revocation, it was appropriately considered when assessing the risk posed by his continued probation.").

Gribbins suggests the trial court violated his due process rights when he was not given notice that his past criminal behavior would be considered as a basis for revoking his probation. Such is factually incorrect in that the motion to revoke cited the Supervision Report of his probation officer which included a recitation of Gribbins' criminal history and his repeated failures to follow the directions of the court or of his probation officers. Therefore, Gribbins did, in fact, receive notice of the present allegations, as well as the significance of past

violations of probation.  This allegation has no merit.  Even so, the court's order makes it clear he was not revoked *because* of his past history, but that his past history, in considering present violations, supported the finding necessary pursuant to *Andrews* that he could not be appropriately managed in the community and presented a significant risk to the community.

## CONCLUSION

The trial court did not abuse its discretion in revoking Gribbins' probation.  We affirm.

ALL CONCUR.


BRIEF FOR APPELLANT:

Adam Meyer
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Rachel A. Wright
Assistant Solicitor General

Matthew F. Kuhn
Solicitor General
Frankfort, Kentucky