RENDERED:  AUGUST 16, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0007-MR

CHRISTOPHER GOODWIN                                APPELLANT


                 APPEAL FROM LOGAN CIRCUIT COURT
v.            HONORABLE JOE W. HENDRICKS, JR., JUDGE
                     ACTION NO. 21-CR-00104


COMMONWEALTH OF KENTUCKY                        APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, CALDWELL, AND LAMBERT, JUDGES.

ACREE, JUDGE:  Appellant, Christopher Goodwin, appeals the Logan Circuit

Court's order revoking his probation.  Having reviewed the record, we affirm.

## BACKGROUND

On January 9, 2021, Appellant was arrested for trafficking

methamphetamine after officers found a glass smoking pipe, a black digital scale,

and 4.5 grams of methamphetamine in Appellant's vehicle.  A grand jury indicted

him on March 12, 2021, and on August 5, 2021, he pleaded guilty to first-degree trafficking in a controlled substance, along with numerous traffic violations. Per his agreement with the Commonwealth, Appellant owed $350 in fines, and the court sentenced him to 10 years of incarceration, probated for five years.

As part of his probation, the court placed several conditions on Appellant, including committing no further offenses, remaining in the supervised area, and properly reporting to his probation officer as directed. As the record reveals, Appellant failed to comply with these conditions in numerous ways.

First, shortly after beginning his probation, Appellant admitted to using marijuana and methamphetamine. Second, Appellant failed to cooperate or report to his probation officer. On January 4, 2022, Appellant failed to report at the appointed time. Then, on January 14, 2022, he failed to report to the meeting rescheduled from January 4. Third, on January 15, 2022, Appellant received a traffic citation for expired registration plates, operating a motor vehicle with an expired operator's license, and failure to maintain required insurance/security. Appellant failed to disclose these traffic violations to his probation officer within 72 hours, which he was required to do.

After this sequence of events, the Commonwealth requested a hearing concerning Appellant's probation and his failure to comply with its conditions. It

appears neither the Commonwealth nor the probation officer sought to revoke Appellant's revocation at that time.

The court scheduled the hearing for January 20, 2022, and Appellant failed to appear. The court issued a bench warrant for Appellant's arrest and rescheduled the hearing for April 21, 2022 – which was then continued until June 30, 2022. Prior to this hearing, on March 15, 2022, law enforcement arrested Appellant, and he remained in jail until his June 30 hearing.

At this hearing, the Commonwealth agreed to allow Appellant to resume probation, so long as Appellant's five-years of probation restarted on June 30, 2022, and he agree to not leave Logan County, unless he had written permission. Appellant assented to these terms, and the court directed him to report to his probation officer the next day. He failed to do so.

On July 20, Appellant's probation officer filed a "Violation of Supervision Report." This was not the first report filed by his probation officer; however, we note this report because in it the probation officer outlines the details of an emergency protective order (EPO) sought by Appellant's girlfriend against him. In the EPO petition, Appellant's girlfriend alleged Appellant said he would kill her. Additionally, Appellant told his girlfriend, among an array of other threats, that he would "bash [her] . . . brains in." Appellant reiterated threats on his girlfriend's life during a recorded phone call he made in the jail to her. After these

threats, the Commonwealth filed a motion to revoke Appellant's probation, and the court scheduled a hearing on July 28, 2022.

Appellant did not attend this hearing because he had two court appearances on that day and could not attend both. However, after missing this hearing, Appellant absconded and disappeared for nearly two months. By his own admissions, Appellant was living in the woods during this time. Ultimately, law enforcement apprehended him in Muhlenberg County, and he appeared in court on September 29, 2022.

At issue in this appearance was whether the court would revoke Appellant's probation. The court heard all the above-mentioned facts and, upon considering the evidence, revoked Appellant's probation. This appeal now follows.

## ANALYSIS

Appellant argues the circuit court failed to comply with the requirements for revoking probation pursuant to KRS[1] 439.3106. More specifically, Appellant argues the Commonwealth failed to present evidence showing Appellant posed a significant risk to the community, and the circuit court failed to make sufficient findings on this element. We disagree.

---

[1] Kentucky Revised Statutes.

When reviewing a circuit court's decision to revoke an individual's probation, we review for abuse of discretion. *Commonwealth v. Andrews*, 448 S.W.3d 773, 780 (Ky. 2014) (citing *Commonwealth v. Lopez*, 292 S.W.3d 878, 881 (Ky. 2009)). Accordingly, this Court "will disturb a ruling only upon finding that 'the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles.'" *Andrews*, 448 S.W.3d at 780 (quoting *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999)).

It is "[w]ithout question, the power to revoke probation is vested in the trial courts and in the trial courts alone." *Id.* at 777. Nevertheless, prior to revoking an individual's probation, a circuit court must consider KRS 439.3106. *Id.* at 776. Pursuant to KRS 439.3106:

> (1) Supervised individuals shall be subject to:
>
> > (a) Violation revocation proceedings and possible incarceration for failure to comply with the conditions of supervision when such failure constitutes a significant risk to prior victims of the supervised individual or the community at large, and cannot be appropriately managed in the community; or
> >
> > (b) Sanctions other than revocation and incarceration as appropriate to the severity of the violation behavior, the risk of future criminal behavior by the offender, and the need for, and availability of, interventions which may assist the offender to remain compliant and crime-free in the community.

KRS 439.3106(1). Thus, the Kentucky Supreme Court said: "KRS 439.3106(1) requires trial courts to consider whether a probationer's failure to abide by a condition of supervision constitutes a significant risk to prior victims or the community at large, and whether the probationer cannot be managed in the community before probation may be revoked." *Andrews*, 448 S.W.3d at 780.

When making these findings, "perfunctorily reciting the statutory language in KRS 439.3106 is not enough." *Helms v. Commonwealth*, 475 S.W.3d 637, 645 (Ky. App. 2015). Rather, "[t]here must be proof in the record established by a preponderance of the evidence that a defendant violated the terms of his release and the statutory criteria for revocation has been met." *Id.* When we undertake this analysis, we must "look to both the written and oral findings in conjunction with one another and not separately in a vacuum." *Commonwealth v. Gilmore*, 587 S.W.3d 627, 630 (Ky. 2019).

Here, sufficient evidence exists to demonstrate that Appellant is a significant risk to the community. Appellant argues his mere failure to report to his probation officer and his failure to attend court dates is not enough to find he is a danger to the community. Glossing over the dangers of allowing unlicensed and uninsured drivers on the road, Appellant fails to account for his violent threats against his girlfriend and his disappearance for nearly two months to go live out in the woods.

The court heard substantial evidence of the repeated and varied threats Appellant made against his girlfriend's life. In short, he threatened to violently beat her to death if she ever ended their relationship. Appellant's girlfriend relayed those threats in her EPO petition, but the court also heard Appellant make these threats via a recorded jail call. With Appellant's notable track record of failing to report and failing to appear in court, it would be nearly impossible to manage Appellant and protect his girlfriend from him, much less the community at large. It appears the only time Appellant attended his court dates were instances where he was already in custody.

Moreover, the underlying criminal charges to which Appellant initially pleaded guilty arose from his possession and distribution of methamphetamines. During his time on probation, Appellant admitted to using illegal substances and failed to report for substance-abuse assessments. There is no indication in the record Appellant ever sought treatment or help for his drug use, despite this being a condition of his probation.

Notwithstanding these above violations, Appellant claims, "[t]he officer would have been justified using graduated sanctions to punish Christopher's violations" instead of outright revoking his probation. (Appellant's Brief at 17.) This argument has no merit as the probation officer did just this, and

the record reveals a slow series of graduated consequences leading up to Appellant's probation revocation.

To begin, the probation officer required Appellant to seek a substance-abuse assessment after admitting to use of marijuana and methamphetamines while on probation. Appellant did not seek out this assessment, but the probation officer did not recommend revocation because of it. After this, Appellant committed further traffic violations of the same nature as the charges he pleaded guilty to. Again, the probation officer did not recommend revocation, but the Commonwealth requested a hearing on this matter. Appellant failed to appear at that court hearing. Even though he did not attend this court date, the Commonwealth did not ask for revocation but agreed to allow Appellant to remain on probation. The day after this hearing, Appellant failed to report to his probation officer.

Appellant had every opportunity to comply with the conditions of his probation, but he failed to do so. The record reveals Appellant received "graduated sanctions to punish Christopher's violations" but his behavior did not change, and he did not cooperate. (Appellant's Brief at 17.) It was only after Appellant absconded and his girlfriend sought an EPO against him that the probation officer recommended revocation and the Commonwealth sought it.

## CONCLUSION

The circuit court heard evidence sufficient to revoke Appellant's probation and, because of this, did not abuse its discretion in revoking Appellant's probation. Having reviewed the record, Appellant's argument has no merit here. We affirm.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Steven J. Buck
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Joseph A. Beckett
Assistant Attorney General
Frankfort, Kentucky