**COMMONWEALTH of Kentucky,**
**Appellant**

v.

**Joseph ANDREWS, Appellee**

**2013-SC-000004-DG**

Supreme Court of Kentucky.

RENDERED: DECEMBER 18, 2014

COUNSEL FOR APPELLANT: Jack Conway, Attorney General of Kentucky, Courtney J. Hightower, Assistant Attorney General

COUNSEL FOR APPELLEE: Shannon Renee Dupree, Assistant Public Advocate, Steven Jared Buck, Assistant Public Advocate

OPINION OF THE COURT BY JUSTICE ABRAMSON

The Commonwealth of Kentucky appeals from a Court of Appeals decision reversing the Pulaski Circuit Court's revocation of Joseph Andrews's probation. Finding that the Pulaski Circuit Court had abused its discretion when it revoked Andrews's probation pursuant to Kentucky Revised Statute ("KRS") 439.3106, the Court of Appeals reversed and remanded the matter to the circuit court for it to impose an alternative to revocation and incarceration. On discretionary review, the Commonwealth now claims that the Court of Appeals erred in finding that KRS 439.3106, a statute that was adopted as part of HB 463 in 2011, applied to the circuit court and in failing to recognize that the lower court properly exercised its

discretion on the facts before it. We reverse the appellate court's decision and reinstate the order of the circuit court.

## FACTS

Appellee Joseph Andrews pled guilty to unlawful possession of a methamphetamine precursor, second offense, on December 20, 2010. Andrews was sentenced to a ten-year prison term, and placed on supervised probation for a period of five years. Among the terms of Andrews's probation was the condition that he refrain from using any drugs unless prescribed by a doctor. Andrews stated in his Presentence Investigation Report interview that he did not have a substance abuse problem and refused drug treatment when the issue was raised by the trial court at sentencing.

On May 3, 2011, Andrews reported to his probation officer, David Rogers, and was given a drug test. After the test revealed a positive result for the use of methamphetamine, Andrews denied having used the drug, asserting to Rogers that the positive result was caused by his taking one of his wife's weight loss pills. Two days later, Andrews's wife called Rogers and explained that Andrews admitted to taking methamphetamine. She reported that he was sorry for lying to Rogers, and that he had voluntarily entered a long-term drug treatment program at the Lake Cumberland Rescue Mission ("LCRM").

Andrews was arrested on June 7, 2011.[1] At his probation revocation hearing, he stipulated to the violation alleged by the Commonwealth. Andrews called Rogers, who testified to the aforementioned facts regarding his probation. He also called Gary Warrick, the director of the LCRM, who testified that Andrews made progress in the program and that there was a bed available to him if he remained on probation. The trial court noted that Andrews, having been convicted of a serious drug offense and having two previous felonies on his record, denied having a drug problem and refused treatment at sentencing. Although the trial court expressed some question about whether KRS 439.3106 applied to a judge's decision on a revocation motion, it nevertheless made oral findings of fact that Andrews had violated the conditions of his probation, was a significant risk to the community, and could not be managed properly in the community.

On appeal to the Court of Appeals, Andrews argued that the trial court abused its discretion in revoking his probation. He maintained that a single positive drug test was insufficient to satisfy the conditions of KRS 439.3106(1), to wit, a probationer's violation constitutes a significant risk to prior victims or the community at large, and the probationer cannot be managed effectively in the community. The Court of Appeals agreed, concluding that the trial court abused its discretion in revoking Andrews's probation. In reversing the trial court, the Court of Appeals opined that the enactment of KRS 439.3106 "restrained the discretion of the trial courts to revoke probation" by declaring that "a failure to comply with a condition of probation is no longer sufficient to automatically justify revocation of probation." The trial court, according to the Court of Appeals, must also make specific findings under KRS 439.3106(1) regarding the risk posed to prior victims or the community and whether the probationer can be managed in the community.

This Court granted discretionary review to determine whether KRS 439.3106 ap-

---

1. An arrest warrant was issued for Andrews following the filing of Rogers's report concerning the violation.

plies and requires trial courts to make additional findings of fact before revoking probation. We must also consider whether the Court of Appeals correctly determined that the trial court abused its discretion in revoking Andrews's probation.

## ANALYSIS

### I. KRS 439.3106 Applies to Trial Courts and Must Be Considered in Determining if Revocation is Appropriate.

In 2011, the Kentucky General Assembly enacted the Public Safety and Offender Accountability Act, commonly referred to as House Bill 463 ("HB 463"). 2011 Ky. Acts 4. With the enactment of HB 463, the legislature adopted a sentencing policy intended to "maintain public safety and hold offenders accountable while reducing recidivism and criminal behavior and improving outcomes for those offenders who are sentenced." KRS 532.007(1). To that end, HB 463 created several new statutes, including various statutes governing probation and conditional discharge. Among the newly enacted probation and parole statutes was KRS 439.3106, which provides as follows:

Supervised individuals shall be subject to:

(1) Violation revocation proceedings and possible incarceration for failure to comply with the conditions of supervision when such failure constitutes a significant risk to prior victims of the supervised individual or the community at large, and cannot be appropriately managed in the community; or

(2) Sanctions other than revocation and incarceration as appropriate to the severity of the violation behavior, the risk of future criminal behavior by the offender, and the need for, and availability of, interventions which may assist the offender to remain compliant and crime-free in the community.

This case marks this Court's earliest opportunity to analyze this statute,[2] and the question presented is an important one—specifically, whether KRS 439.3106 requires a trial court revoking a supervised individual's probation to first find that 1) the probationer's failure to abide by the conditions of supervision constitutes a significant risk to prior victims or the community; and 2) the probationer cannot be managed in the community.

■ In Andrews's case, the Court of Appeals did not directly consider the applicability of KRS 439.3106 to trial courts, instead analyzing whether the trial court, having *applied* KRS 439.3106, abused its discretion in revoking Andrews's probation. Now, on discretionary review, the Commonwealth maintains that KRS 439.3106 does not require trial courts to make additional findings of fact in revocation proceedings because KRS 439.3106 only applies to the Department of Corrections ("DOC").[3]

---

2. Since the 2011 enactment of KRS 439.3106, the Court of Appeals has had the occasion to address it in a small flurry of cases. *See Jarrell v. Commonwealth*, 384 S.W.3d 195 (Ky.App.2012); *Southwood v. Commonwealth*, 372 S.W.3d 882 (Ky.App.2012); *Kaletch v. Commonwealth*, 396 S.W.3d 324 (Ky.App. 2013). The parties in the aforementioned cases did not seek discretionary review in this Court.

3. Andrews insists that the Commonwealth, having failed to raise the precise question of KRS 439.3106's applicability in the Court of Appeals, has failed to preserve the issue for appellate review. However, having prevailed at the trial court level (where the issue was raised), the Commonwealth had no reason to attack the trial court's application of this statute before the Court of Appeals. If the statute actually does not apply, this Court is not required to perpetuate an erroneous interpretation of the law. *Mark D. Dean, P.S.C. v.*

■ Without question, the power to revoke probation is vested in the trial courts and in the trial courts alone. KRS 533.010 *et seq.* Historically, our statutes have reflected the trial court's broad discretion in overseeing a defendant's probation, including any decision to revoke: "... [c]onditions of probation shall be imposed as provided in KRS 533.030, but the court may modify or enlarge the conditions or, if the defendant commits an additional offense or violates a condition, revoke the sentence at any time prior to the expiration or termination of the period of probation." KRS 533.020(1). Whether KRS 439.3106 sets forth new criteria that trial courts must consider when determining the propriety of probation revocation is in essence a matter of statutory construction. As often noted, construing statutes requires us "to give effect to the intent of the General Assembly. We derive that intent, if at all possible, from the language the General Assembly chose, either as defined by the General Assembly or as generally understood in the context of the matter under consideration." *Shawnee Telecom Resources, Inc. v. Brown,* 354 S.W.3d 542, 551 (Ky.2011).

■ Turning to KRS 439.3106, it is apparent that, although somewhat awkwardly worded, the statute sets forth the potential consequences following a probation violation. If a supervised individual[4] violates the terms of probation, there are two possible outcomes: revocation and possible incarceration, KRS 439.3106(1), or the imposition of sanctions "other than revocation," KRS 439.3106(2). More specifically, KRS 439.3106(1) requires as conditions precedent to revocation that the probationer's failure to comply with the terms of probation constitutes "a significant risk to [his] prior victims ... or the community at large," and that the probationer "cannot be appropriately managed in the community." There is no qualification in the language that marks these conditions as intended only for consideration by the DOC's probation and parole officers. Indeed, the plain language of the statute lends itself to only one conclusion—both the trial court and the Department of Corrections' officers must assess a probationer's conduct in light of KRS 439.3106 and proceed in accordance with the statute.

This interpretation of KRS 439.3106(1) as requiring trial courts in revocation proceedings to consider specifically the risks to others, appropriate management of the probationer in the community, and the feasibility of lesser sanctions is underscored by other provisions of the chapter, as well as the associated administrative regulations, specifically those concerning the imposition of sanctions other than revocation and incarceration. When setting the conditions of supervision, a sentencing court may require the DOC to impose accountability measures known as graduated sanctions[5] for violations of the conditions of supervision:

*Commonwealth Bank,* 434 S.W.3d 489, 496 (Ky.2014) *See also Emberton v. GMRI, Inc.,* 299 S.W.3d 565, 576 (Ky.2009) ("Moreover, an appellate court may affirm a lower court's decision on other grounds as long as the lower court reached the correct result."). In sum, the issue is properly before this Court.

4. A " 'supervised individual' means an individual placed on probation by a court or serving a period of parole or post-release supervision from prison or jail." KRS 439.250(10).

5. " 'Graduated sanction' means any of a wide range of accountability measures and programs for supervised individuals, including but not limited to electronic monitoring; drug and alcohol testing or monitoring; day or evening reporting centers; restitution centers; disallowance of future earned compliance credits; rehabilitative interventions such as substance abuse or mental health treatment;

For supervised individuals on probation, the court having jurisdiction of the case shall determine the conditions of community supervision and may impose as a condition of community supervision that the department supervising the individual shall, in accordance with KRS 439.3108, impose graduated sanctions adopted by the department for violations of the conditions of community supervision.

KRS 439.553.

The language of KRS 439.3106(2) regarding "other sanctions" loosely tracks KRS 439.3107, which directs the DOC to adopt a system of graduated sanctions for "the most common types of supervision violations."[6] Under 439.3108(1)(a), the DOC, "notwithstanding any administrative regulation or law to the contrary," has the authority to modify the conditions of probation "for the limited purpose of imposing graduated sanctions[.]"[7] The guidelines for applying graduated sanctions are set forth in 501 Kentucky Administrative Regulations ("KAR") 6:250. When imposing graduated sanctions under this regulation, a probation officer must first consider various factors including:

(a) Offender's assessed risk and needs level;

(b) Offender's adjustment on supervision;

(c) Severity of the current violation;

(d) Seriousness of the offender's previous criminal record;

(e) Number and severity of any previous supervision violations; and

(f) Extent to which graduated sanctions were imposed for previous violations.

501 KAR 6:250.

The probation officer may then proceed to reviewing "the circumstances of the offender and the violations at issue to determine if the violation behavior is appropriately responded to with graduated sanctions." *Id.* Certain violations, such as absconding or receiving a new felony conviction, require the probation officer to submit the matter to the trial court[8] without the possibility of imposing graduated sanctions. *Id.* Otherwise, the probation officer, having considered the circumstances surrounding the probationer and the violation, must make a determination as to whether graduated sanctions are appropriate. If graduated sanctions are determined to be an inappropriate response to a violation, "then the officer shall report the violation" to the trial court. *Id.*

Under the 2011 statutory reform, when a probationer appears before the trial court because he has failed to comply with the terms of probation and the probation officer has determined that graduated sanctions are inappropriate, KRS 439.3106 must be considered before probation may

---

reporting requirements to probation and parole officers; community service or work crews; secure or unsecure residential treatment facilities or halfway houses; and short-term or intermittent incarceration[.]" KRS 446.010(21).

6. "Common types" of violations include "failure to report; failure to pay fines, fees, and victim restitution; failure to participate in a required program or service; failure to complete community service; violation of a protective or no contact order; and failure to

refrain from the use of alcohol or controlled substances." KRS 439.3107.

7. The sentencing court must be notified of the modified conditions of supervision, KRS 439.3108(8), and if the supervised individual objects to the imposition of a graduated sanction, he is entitled to be heard by the sentencing court. KRS 439.3108(4).

8. The pertinent regulation employs the term "releasing authority" defined as "the court with jurisdiction over the sentence that granted probation." 501 KAR 6:250 § 1(7).

be revoked. If the court's order of probation was silent as to the imposition of graduated sanctions, the statute nevertheless applies upon consideration of probation revocation. By requiring trial courts to determine that a probationer is a danger to prior victims or the community at large and that he/she cannot be appropriately managed in the community before revoking probation, the legislature furthers the objectives of the graduated sanctions schema to ensure that probationers are not being incarcerated for minor probation violations.[9] *See Reyes v. Hardin Cnty.,* 55 S.W.3d 337, 342 (Ky.2001) ("The universal rule is, that in construing statutes it must be presumed that the Legislature intended something by what it attempted to do[.]").

Despite the unqualified statutory language, the Commonwealth maintains KRS 439.3106 is not applicable to a trial court addressing a probationer's violation of the terms of his supervision. In support of its position, the Commonwealth directs this Court to KRS 439.310, which states that the commissioner of the DOC shall appoint probation and parole officers to "administer the provisions of KRS 439.250 to 439.560." The Commonwealth contends that this language demonstrates that the cited statutes, which include KRS 439.3106, are applicable only to the DOC, not the courts or other agencies, and that KRS 439.3106 simply establishes how the DOC must implement graduated sanctions once a trial court has imposed them as a condition of supervision.

■ The location of KRS 439.3106 in the "Probation and Parole" chapter in no way limits its application to the DOC. There are multiple provisions within the span of KRS 439.250 to 439.560 that clearly apply to the courts and entities other than the DOC and its officers. For example, KRS 439.265 and 439.267, statutes pertaining to shock probation, are to be applied by *trial courts.*[10] Moreover, the Commonwealth's interpretation of KRS 439.3106 would prohibit a probation officer from seeking the highest sanction—revocation and incarceration—if the conditions of the statute were not met, yet permit a trial court reviewing a probationer's status to revoke and incarcerate under the very same circumstances. The Commonwealth offers no rationale for this "double standard," and we can conceive of none. Given that the authority to revoke probation is vested in the courts alone, it also seems particularly illogical that the legislature would place the burden of additional findings on probation officers but allow a trial court to disregard those findings. Such a reading creates an exercise in futility on the part of probation and parole officers, undermining essentially all of KRS 439.3107, KRS 439.3108, and 501 KAR 6:250. As repeatedly noted, statutes should be construed so that no part is meaningless or ineffectual. *Brooks v. Commonwealth,* 217 S.W.3d 219, 223 (Ky. 2007). Thus, we reject the Commonwealth's argument that KRS 439.3106 only applies to the DOC.

In sum, the application of KRS 439.3106(1) allows the trial court to conclude with some certainty that the imposition of some other accountability measure would be fruitless, as the probationer both

---

9. 501 KAR 6:250(2)(a) provides that minor violations, such as missing a scheduled report day, failing to seek employment, or committing a traffic offense without arrest may be resolved through informal case management strategy.

10. *See also* KRS 439.553 (judicial determination of conditions of community supervision); KRS 439.550 (probation ordered by a district court); KRS 439.370 (directing the Commonwealth's attorney to provide a fact summary with commitment papers).

poses a risk and is not manageable in the community. We conclude that KRS 439.3106(1) requires trial courts to consider whether a probationer's failure to abide by a condition of supervision constitutes a significant risk to prior victims or the community at large, and whether the probationer cannot be managed in the community before probation may be revoked.

## II. The Trial Court Did Not Abuse its Discretion.

■■■ As the final issue in this appeal, the Commonwealth insists that the Court of Appeals erred in disturbing the trial court's proper exercise of its discretion as to Andrews's probation. A decision to revoke probation is reviewed for an abuse of discretion. *Commonwealth v. Lopez,* 292 S.W.3d 878 (Ky.2009). Under our abuse of discretion standard of review, we will disturb a ruling only upon finding that "the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English,* 993 S.W.2d 941, 945 (Ky.1999). Here, the Court of Appeals held that the trial court's decision was arbitrary because Andrews's probation was revoked based on one positive drug test and his criminal history. The Court of Appeals pointedly opined that "Andrews's prior criminal history is an insufficient basis for revocation" under KRS 439.3106 because that information was known at sentencing prior to his placement on probation. However, a review of the revocation proceedings reflects that the trial court considered more than just Andrews's criminal history and the one drug test.

Testimony at the revocation proceeding focused, in part, on misrepresentations which Andrews had made to both the court and his probation officer. The trial court specifically observed that Andrews had refused drug treatment at the time of sentencing, claiming that he did not suffer from a substance abuse problem. The court also heard testimony that Andrews, having tested positive for methamphetamine, lied to his probation officer and blamed the failed drug test on diet pills. The Commonwealth elicited testimony that Andrews had four previous felony convictions, and had been unsuccessful on probation once before. The trial court was particularly concerned about Andrews's lack of candor with those trying to manage his probation. Although uncertain about the need for a trial court to reference KRS 439.3106, the judge nonetheless revoked probation only after he made oral findings that Andrews's continued drug use posed a risk to the community and that he could not be appropriately managed in the community.

While HB 463 reflects a new emphasis in imposing and managing probation, it does not upend the trial court's discretion in matters of probation revocation, provided that discretion is exercised consistent with statutory criteria. If the trial court had based its decision solely on Andrews's violation of the condition that he remain drug-free, we would have had to deem that decision an abuse of discretion under the new state of the law. However, the trial court plainly considered a variety of factors, and specifically considered the criteria in KRS 439.3106. The trial court found that Andrews's recent drug use and past history strongly suggested that he was at great risk of reoffending and committing future drug crimes in the community., While Andrews's criminal history could not be the sole basis for his revocation, it was appropriately considered when assessing the risk posed by his continued probation. Furthermore, the trial court appropriately questioned whether Andrews's entry into a drug treatment program was truly "voluntary," considering that he only sought treatment at LCRM after he knew he had

been "caught" violating the conditions of his probation. Andrews's entry into a treatment program only after testing positive for methamphetamine, coupled with his initial refusal to accept treatment, support the trial court's conclusion that Andrews could not be properly managed in the community. In sum, although Andrews's situation was not clear-cut and another judge may have opted for a lesser sanction, the trial court's decision to revoke Andrews's probation was neither arbitrary nor unreasonable. The trial court acted within its discretion in revoking Andrews's probation under KRS 439.3106(1), and that decision will stand.

## CONCLUSION

We agree that KRS 439.3106(1) requires trial courts to find that the probationer's failure to abide by a condition of supervision constitutes a significant risk to prior victims or the community, and that the probationer cannot be managed in the community before probation may be revoked. We further hold that the Court of Appeals erred in finding that the trial court abused its discretion in this case. Therefore, we reverse the opinion of the Court of Appeals and reinstate the order of the Pulaski Circuit Court revoking Joseph Andrews's probation.

All sitting. All concur.