Kevin MCVEY, Appellant

v.

COMMONWEALTH of Kentucky, Appellee

NO. 2014–CA–000957–MR

Court of Appeals of Kentucky.

RENDERED: JULY 10, 2015; 10:00 A.M.

BRIEF FOR APPELLANT: Linda Roberts Horsman, Assistant Public Advocate, Frankfort, Kentucky

BRIEF FOR APPELLEE: Jack Conway, Attorney General of Kentucky, Leilani K.M. Martin, Assistant Attorney General, Frankfort, Kentucky

BEFORE: JONES, J. LAMBERT, AND MAZE, JUDGES.

*OPINION*

J. LAMBERT, JUDGE:

Kevin McVey appeals from a Wolfe Circuit Court order revoking his diversion agreement. After careful review, we affirm the trial court's order.

In 2009, McVey was indicted on one count of trafficking in a controlled substance in the first degree and one count of trafficking in a controlled substance in the third degree. By agreement with the Commonwealth, the charges were amended to one count of possession of a controlled substance in the first degree, and disposition of the case was diverted for a period of five years. McVey was ordered to complete Drug Court, pay UNITE $200.00 in restitution and refrain from having "access to a handgun or firearm during the pendency of the pretrial diversion." An order to this effect was entered on January 7, 2010, and McVey successfully completed the Drug Court program two years later, in February 2012.

In February 2014, the trial court entered an order setting a hearing to determine whether McVey had violated his diversion agreement by allegedly possessing firearms. In March 2014, the Commonwealth moved to void the agreement, citing the fact that McVey had reported to the Kentucky State Police that two men had robbed him and taken three guns.

At the hearing, Trooper Grant Faulkner testified that he responded to a complaint from McVey that two men had robbed him of a television, thirty knives and three guns. The property to which Trooper Faulkner was dispatched contained a house and a two-level secondary brick structure. The upper level of this building consisted of a room containing a bed and a chair. When the trooper arrived, he noted McVey had sustained a cut to his hand during the course of the robbery, which had already been bandaged by first responders. McVey told Trooper Faulkner that he was the victim of the robbery, that he lived at the property where the robbery occurred, that he knew the two men who robbed him, that the television, knives, and rifles that belonged to him were the items

stolen, that he had just arrived home from the store when the robbers arrived, and that he was able to provide serial numbers for two of the rifles.

Faulkner's investigation resulted in the two alleged robbers being charged with high-level felony offenses, and the three rifles were returned to McVey about three to four days after the robbery. Faulkner returned to the site of the robbery and was advised by the occupant of the main house that McVey was at a mobile home park. Faulkner found McVey at the park and returned the guns to him. McVey signed a receipt for the firearms and told Faulkner he was happy to get his guns back.

Trooper Faulkner read the police report into evidence. It included statements from the robbers that they stole the guns from McVey because he had sold them bad methamphetamine, that he had sold them fake drugs in the past, that he had a minor sell illegal drugs for him, and that he had nice material possessions because he was "ripping people off."

The trial court recognized one of the robber's names, and asked Faulkner if he was the same individual whose home had been subject to arson about one to two weeks after the robbery. Faulkner confirmed that the robber was the same person.

McVey's sixteen-year-old stepson testified that he, not McVey, was the owner of the rifles, which had been given to him as gifts. He stated that because of McVey's safety concerns about his young step-grandchildren, the rifles were kept at McVey's mother's house.

McVey testified that he lived in a mobile home park with his wife with whom he had been in a relationship for nine years. On the night he was robbed, he had a disagreement with his wife and went to his mother's home. Her house was locked, so he decided to spend the night in a storage shed on her property in which the guns were stored. He testified that it was his first time ever spending the night there as an adult. While at the storage shed, he was robbed of the guns by two men whom he knew. He denied dealing methamphetamine to anyone. He explained that he signed the state police receipt for the recovered firearms because the owner of the guns, his step-son, was underage. He admitted that he had purchased the rifles.

The trial court found that McVey had violated the terms of his diversion agreement by having access to the guns at the two residences. At final sentencing, the evidence established that McVey had graduated from the Drug Court program, but he disclosed in his Presentence Investigation Report that he had relapsed into illegal drug use. The trial court stated that it had to consider two factors: (1) the least restrictive means of punishment regarding the violation, and (2) whether McVey was a danger to himself or to others if he was released. The trial court explained that it had already allowed McVey the least restrictive means of punishment by sending him to drug court. The trial court noted that McVey was originally charged with trafficking in a controlled substance, and that in the present instance it was alleged that there was a disagreement over a prior drug transaction. The trial court further noted that in that geographic region, guns and knives were often taken as payment for drugs, that there had been an allegation of a drug deal gone bad, and that McVey was the one who had reported the guns stolen. The trial court entered an order vacating the diversion agreement, noting that a "less restrictive sentence" of drug court had been previously imposed. The order held that because a robbery was involved, McVey was a danger to others or

to himself, and imposed a sentence of three years. This appeal now follows.

■ Kentucky Revised Statutes (KRS) 533.256(2) provides that "[i]n making a determination as to whether or not a pretrial diversion agreement should be voided, the court shall use the same criteria as for the revocation of probation, and the defendant shall have the same rights as he or she would if probation revocation was sought." Thus, the standard for reviewing a trial court's decision to void a diversion agreement is the same abuse of discretion standard which is used to review probation revocation decisions. *Lucas v. Commonwealth*, 258 S.W.3d 806, 807 (Ky.App.2008).

KRS 439.3106 states:

Supervised individuals shall be subject to:

(1) Violation revocation proceedings and possible incarceration for failure to comply with the conditions of supervision when such failure constitutes a significant risk to prior victims of the supervised individual or the community at large, and cannot be appropriately managed in the community; or

(2) Sanctions other than revocation and incarceration as appropriate to the severity of the violation behavior, the risk of future criminal behavior by the offender, and the need for, and availability of, interventions which may assist the offender to remain compliant and crimefree in the community.

Recently, the Kentucky Supreme Court explained that "KRS 439.3106(1) requires trial courts to consider whether a probationer's failure to abide by a condition of supervision constitutes a significant risk to prior victims or the community at large, and whether the probationer cannot be managed in the community before probation may be revoked." *Commonwealth v. Andrews*, 448 S.W.3d 773, 780 (Ky.2014).

By requiring the trial court to make such a determination, "the legislature furthers the objectives of the graduated sanctions schema to ensure that probationers are not being incarcerated for minor probation violations." *Id.* at 779. The Court also stressed that its holding "does not upend the trial court's discretion in matters of probation revocation, provided that discretion is exercised consistent with statutory criteria." *Id.* at 780.

■ McVey argues that the trial court's findings were insufficient to justify voiding his diversion agreement, because there was no evidence that he posed a significant risk to prior victims or the community or that he could not be managed in the community. He contends that the trial court improperly relied upon the hearsay statements of individuals facing life sentences for robbing McVey, and disputes the finding that he was still involved in drug trafficking, pointing out that he was never charged with trafficking as a result of the robbers' hearsay statements. He contends that his status as the victim of a robbery was insufficient to find that he was a danger to himself and others, or that he posed a significant risk to the community.

■ Hearsay evidence is acceptable at probation revocation hearings. *Barker v. Commonwealth*, 379 S.W.3d 116, 130 (Ky. 2012). The evidence presented at the hearing supported a finding that McVey was in possession of three rifles, in violation of his diversion agreement, and that he was not merely the victim of a robbery, but was also involved with trafficking in drugs. The fact that he was not charged with trafficking is not dispositive. The evidence was sufficient for the court to conclude that McVey's activities posed a significant risk to the community.

■ McVey further argues that the trial court incorrectly considered the diver-

sion agreement itself as a graduated sanction and failed to consider any sanction less than voiding the agreement. The record reflects that the trial court appropriately considered McVey's completion of the drug court program and subsequent relapse in assessing whether the imposition of some other accountability measure would be fruitless. *Andrews,* 448 S.W.3d at 779–80. "Nothing in the statute or in the Supreme Court's interpretation of it *requires* the trial court to impose lesser sanctions prior to revoking probation." *McClure v. Commonwealth,* 457 S.W.3d 728, 732, (Ky.App.2015). Although it did not expressly refer to the KRS 439.3601 factors, the trial court's fact finding and analysis were sufficient to fulfill the requirements of the statute.

The order revoking the diversion agreement and imposing sentence is affirmed.

ALL CONCUR.